IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KIMBERLY L. KALLENBERG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:06-CV-371 |
| | ) |
| KNOX COUNTY BOARD OF EDUCATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM**

Now before the court is the motion for summary judgment [doc. 40] filed by defendant Knox County Board of Education ("KCBE").[1] Plaintiff has responded to the motion [docs. 67-69].

Also before the court is the motion for summary judgment [doc. 29] filed by defendant Russ Oaks in his individual and official capacities. The parties have submitted responses, replies, and surreplies [docs. 46, 50, 51, 53, 65].

For the reasons that follow, Oaks's individual motion will be denied, and the remaining defendants' motion will be granted in part and denied in part. This civil action remains set for a jury trial on January 20, 2009.

---

[1] Although the motion mentions only defendant KCBE, the court presumes that the document has in fact been filed on behalf of all governmental and official capacity defendants. *See, e.g., Ky. v. Graham*, 473 U.S. 159 (1985). The court also observes that defendants' summary judgment briefing contains citations to numerous deposition transcript pages, but defendants failed submit those transcripts as a part of the record in support of their motion.

## I.

*Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that its opponent has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law. *Id.* at 251-52.

II.

*Background*

Plaintiff is the former vice principal of KCBE's Powell High School. She was placed on administrative leave with pay in July 2006. On July 21, 2006, defendant Charles Lindsey, who at that time was KCBE's Superintendent, wrote to plaintiff advising that

> . . . you will remain on Administrative Leave with pay until we are able to complete our investigation of the allegations made regarding your conduct as an administrator at Powell High School.
>
> Based on the information currently available, I believe you can no longer be an effective administrator at Powell High School. At the conclusion of our investigation, I will contact you regarding placement.

[Doc. 40, ex. 1].

According to plaintiff's complaint, on July 25, 2006, defendant Oaks (KCBE's Director of Public Affairs) "sent a blast email to school administrators and employees and [sic] publicly confirming that Kallenberg had been placed on administrative leave for 'grade changing/tampering and an inappropriate relationship with a student.'" [Doc. 1, ¶ 25]. The complaint further alleges that on that same day Oaks "spoke with various members of the print and television media wherein he directly and/or indirectly confirmed the identity of the student in addition to the fact that Kallenberg was under investigation for grade changing/tampering and that the allegations involving 'sex' had been referred to the Department of Children's Services." [Doc. 1, ¶ 26].

Plaintiff remained on administrative leave. In April 2007, KCBE notified her that her employment contract would not be renewed. In June 2007, plaintiff's status was changed to administrative leave without pay, and tenure revocation proceedings were initiated against her. Plaintiff resigned in September 2007. Her attorney explained,

> The reason for Mrs. Kallenberg's resignation is the fact that [KCBE] would serve as the trier of fact/jury regarding the issues of Mrs. Kallenberg's tenure revocation. Mrs. Kallenberg strongly feels that there is an inherent conflict with [KCBE], which is her employer as well as a named defendant in the pending federal litigation, attempting to function as a neutral body.

III.

*Analysis*

As to the official capacity and governmental entity defendants, plaintiff alleges gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act, TENN. CODE ANN. § 4-21-101 *et seq.* ("THRA"), along with retaliation in violation of Title VII, the THRA, and the Fair Labor Standards Act ("FLSA").[2] The complaint also contains a defamation count against defendant Oaks in his individual and official capacities.

A. Gender Discrimination

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42

---

[2] Plaintiff's FLSA claim is not addressed by any party in the context of the motions currently before the court.

U.S.C. § 2000e-2(a)(1). Additionally, Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).[3] There is no individual liability under Title VII. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405-06 (6th Cir. 1997).

At summary judgment, the court evaluates a Title VII claimant's inferential and circumstantial evidence using the familiar *McDonnell Douglas* burden-shifting approach. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In *McDonnell Douglas* the Supreme Court established "the order and allocation of proof in a private, non-class action challenging employment discrimination . . . ." *Id.* at 800-03. Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802. The elements necessary to make a *prima facie* showing will vary depending on the facts of each case and the type of discrimination alleged. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575-76 (1978).

Plaintiffs bear the burden of persuasion throughout the entire process. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000). If a plaintiff is able to establish her *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 792-93

---

[3] THRA claims are analyzed under the same evidentiary framework as is used under Title VII. *See, e.g., Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996).

(citation omitted). If the employer successfully provides such a reason, *McDonnell Douglas*'s regime then places the final burden on the plaintiff to "demonstrate by competent evidence" that the employer's proffered reason is in fact merely a pretext. *McDonnell Douglas*, 411 U.S. at 805. Pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Plaintiff may establish her *prima facie* case of gender discrimination by showing that: (1) she belongs to a protected class; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position in question; and (4) she was replaced by a person of the opposite gender, or a similarly situated non-protected individual was treated more favorably. *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). Defendants do not dispute that plaintiff is a member of a protected class and that she was qualified for her position. It is thus the second and fourth prongs of the *prima facie* case which are at issue.

Plaintiff has shown that she suffered an adverse employment action. She was placed on administrative leave with loss of position, her contract was not renewed, she was transitioned to administrative leave without pay, and tenure revocation proceedings were initiated against her. At a minimum, these events cumulatively represent an adverse employment action.

Defendants argue that plaintiff waived her right to challenge the disciplinary actions taken against her because she resigned prior to attending a tenure revocation due process hearing. This argument is without merit. Defendants do not argue that plaintiff failed to file an EEOC charge or that she did not receive a "right to sue" letter, which are the only administrative proceedings a plaintiff is required to exhaust prior to filing a Title VII suit. *See, e.g., Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006).

As for the fourth element of her *prima facie* case, plaintiff alleges that she was replaced by a male friend of Lindsey's. [Lindsey dep. at 162]. Defendants respond that plaintiff was in fact replaced by "a female from Georgia" and that the male was placed in a newly-created second vice principal position. [Lindsey dep. at 159-63]. Lindsey, however, "doesn't know" and does not "have any clue" as to which of the vice principals took over plaintiff's duties. [Lindsey dep. at 159, 163]. The court accordingly finds a genuine issue of material fact as to whether plaintiff was replaced by someone outside the protected class. Plaintiff has thus made out her *prima facie* case.

The burden now shifts to the governmental and official capacity defendants to articulate a legitimate nondiscriminatory reason for the challenged employment actions. Defendants have done so. The record indicates that plaintiff was under investigation for allegations of grade-tampering and other inappropriate conduct. Defendants insist that they conducted a thorough investigation before reaching a "reasonably informed [and] considered decision" to initially suspend plaintiff. Defendants contend that Superintendent Lindsey

reached that decision after being apprised of the allegations against plaintiff, including allegations of a sexually inappropriate nature. [Doc. 43, p. 35].

The burden thus returns to plaintiff to "demonstrate by competent evidence" that defendants' proffered reason is in fact merely a pretext. *McDonnell Douglas*, 411 U.S. at 805. As noted, pretext may be demonstrated "indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.

According to the deposition testimony of KCBE Human Resource Director Kathy Sims, it is KCBE's policy to never make a disciplinary decision prior to interviewing the employee in what is called an "opportunity to tell" meeting. [Sims dep. at 20-21]. Ms. Sims is unable to recall any circumstance where a disciplinary decision was reached before the employee had received an "opportunity to tell." [Sims dep. at 21].

The parties disagree as to whether plaintiff received her "opportunity to tell" on July 17 or July 25, 2006 - or whether she in fact received such a meeting at all.[4] Regardless, in a memo written July *14*, 2006 (prior to either purported "opportunity to tell"), Ms. Sims wrote that "Kim Kallenberg . . . was placed on Administrative Leave with Pay on July 14, 2006[,] until further notice." A June 18, 2007 memo from Ms. Sims confirms that date. [Doc. 40, ex. 4].

---

[4] Plaintiff has submitted documentation showing that other KCBE employees received "opportunity to tell" meetings. [Doc. 69, exs. 2C, 2D, 2G]. Defendants have not produced similar formal documentation of plaintiff's "opportunity to tell."

8

According to Lindsey's deposition testimony, when investigating allegations of sexual misconduct with a student, KCBE "typically" interviews the student involved. [Lindsey dep. at 26]. However, the student involved in the allegations against plaintiff was not interviewed. Lindsey could not recall any other investigation where the student was not questioned. [Lindsey dep. at 26-27].

Further, although defendants insist that Lindsey did not reach his "reasonably informed" disciplinary decision until after he had been apprised of all the allegations against plaintiff, including allegations of a sexually inappropriate nature, Lindsey testified that as of the morning of July 25, 2006 (the second purported "opportunity to tell" meeting), he "personally had not heard anything about sexual allegations until [plaintiff and her counsel] had a press conference" later that day. [Lindsey dep. at 80]. Lindsey has further testified, "We weren't investigating" allegations of "inappropriate" or "sexual" conduct as of the morning of July 25, 2006. [Lindsey dep. at 95]. However, the decision to discipline plaintiff was apparently made on July 14, 2006.

In light of the above, the court concludes that plaintiff has raised a genuine issue of material fact as to pretext. Defendants purport to have engaged in a thorough investigation before reaching a "reasonably informed [and] considered decision." However, plaintiff has cited evidence that defendants made their disciplinary decision prior to providing her a standard "opportunity to tell" meeting. Plaintiff has cited evidence that defendants did not interview the student involved in the alleged misconduct. Both of these

9

facts fall outside of defendants' purported disciplinary norm. Further, defendants insist that Lindsey did not reach his suspension decision until after he had been apprised of all the allegations against plaintiff, but Lindsey elsewhere denies that contention. Defendants also represent that Lindsey did not make his decision until after reviewing the report of the July 17, 2006 meeting [doc. 43, p. 35], yet the record indicates that plaintiff had already been suspended prior to that date. Lastly, plaintiff has produced evidence that her attire and breast size where discussed at the July 17 meeting. At the summary judgment stage, these material facts and disputes are sufficient to suggest that defendants' "proffered explanation is unworthy of credence." To the extent that it seeks dismissal of plaintiff's gender discrimination claim, defendants' summary judgment motion must be denied.

## B. Retaliation

Claims of retaliation are also analyzed under the *McDonnell Douglas/Burdine* burden-shifting framework. *See DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004). To demonstrate a *prima facie* case of retaliation under Title VII, a plaintiff must prove: "(1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 552-53 (6th Cir. 2002) (citations omitted). Once the plaintiff has made out a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for its actions. *Id.* at 553. If the

employer articulates such a reason, the burden returns to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.* The ultimate burden of persuasion remains with the plaintiff at all times. *Id.*

It is undisputed that plaintiff is a member of a protected class and that she engaged in protected activity when she filed her initial EEOC charge of gender discrimination on August 1, 2006. It is the causation and adverse employment action prongs of her *prima facie* case which are at issue.

In her summary judgment response, plaintiff cites four allegedly retaliatory adverse employment actions: the April 2007 nonrenewal of her employment contract; her June 2007 change of status to administrative leave *without* pay; the June 2007 initiation of tenure revocation proceedings; and an alleged sexual misconduct investigation of her husband, who is also a KCBE employee. As discussed above, the first three listed incidents at least cumulatively constitute an adverse employment action. The allegedly retaliatory investigation of Mr. Kallenberg could also be considered an adverse employment action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("[A] plaintiff must show that . . . the challenged action . . . well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (citations and quotations omitted).

However, as for the final element of her *prima facie* case of retaliation, the court concludes that plaintiff has failed to demonstrate a causal connection between her protected activity and the above-cited adverse employment actions. In her summary

judgment response, plaintiff makes no meaningful argument on this point other than to claim that the allegedly retaliatory events happened "after" she filed her EEOC charges (August 1 and 4, 2006) and "after" she filed the present lawsuit (August 31, 2006).

Despite "tension in Sixth Circuit law on whether proximity alone may *ever* suffice to show causation, there is a consensus that proximity alone generally will not suffice where the adverse action occurs more than a few months . . . after the protected conduct." *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 629 (6th Cir. 2008) (emphasis in original). The tenure, pay, and contract incidents all occurred between seven and one-half and nine and one-half months after plaintiff's last protected activity. That is simply too much time for plaintiff to rely on temporal proximity alone. There is, however, Sixth Circuit authority suggesting "that proximity alone - if covering a short time span - may suffice to show causation," *see id.*, rendering the investigation of plaintiff's husband a much closer call.

According to the complaint, defendants "began to retaliate against Plaintiff by instigating an investigation to embarrass and humiliate Plaintiff's husband who is a fellow employee of KCBE. This investigation was sexual in nature and allegedly involved a subordinate employee." [Complaint, ¶ 43]. According to her summary judgment briefing, defendants "began surveilling Ms. Kallenberg's husband . . . for any indicia of misconduct." [Doc. 68, p. 47]. These contentions are not supported by any accurate citation to the record and are thus of no assistance to plaintiff in establishing her *prima facie* case. "It is well settled that the non-moving party must cite specific portions of the record in opposition to

12

a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997). A party responding to a summary judgment motion "*must . . .* set out *specific facts* showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2) (emphasis added).

The court must therefore turn to plaintiff's second EEOC charge, which her summary judgment response alleges to have been filed on August 10, 2006. [Doc. 68, p. 47-48]. The second charge states in material part,

> On August 1, 2006, I filed a Charge of Discrimination against my employer. In retaliation, an assistant coach that works with my husband, both of whom are employed by [KCBE], was asked a series of inappropriate questions by a Human Resource representative of our employer. These questions were embarrassing and . . . about a romantic relationship between her and my husband[.]

The problem with plaintiff's causal connection theory is that her second EEOC charge was **not** filed on August 10, 2006, as she now represents to the court. It was instead filed on August **4**, 2006. Further, in her summary judgment response, plaintiff argues only that a copy of the first charge "was mailed directly to each named Defendant. Defendants KCBE and Superintendent Lindsey responded to the complaint on _____ 2007 [sic]." [Doc. 68, p. 48].

Plaintiff's incomplete and inaccurate representations obviously do not demonstrate that defendants actually had notice of her initial charge prior to the purported retaliation against her husband. These events involve a very short window of time between

August 1 and (at the latest) August 3, 2006 - the date she signed her second charge. Plaintiff cites no evidence as to what date the purported retaliation occurred or what date the defendants received their copies in the mail. She has thus failed to even show which event happened first, let alone demonstrate a causal connection between the two. Because plaintiff is unable to make out her *prima facie* case, defendants' summary judgment motion will be granted to the extent that it seeks dismissal of the Title VII and THRA retaliation claims.

## C. Defamation

The complaint also alleges the tort of slander as to defendant Oaks individually. Plaintiff complains that

> shortly before the July 25, 2006 meeting with Defendant Superintendent Lindsey . . ., Oaks sent a blast email to school administrators and employees and [sic] publicly confirming that Kallenberg had been placed on administrative leave for 'grade changing/tampering and an inappropriate relationship with a student.'
>
> [O]n July 25, 2006[,] . . . Oaks spoke with various members of the print and television media wherein he directly and/or indirectly confirmed the identity of the student in addition to the fact that Kallenberg was under investigation for grade changing/tampering and that the allegations involving 'sex' had been referred to the Department of Children's Services.

[Doc. 1, ¶¶ 25, 26].

To establish a *prima facie* case of defamation under Tennessee law, a plaintiff must establish that the defendant communicated a statement to a third party either: (1) with knowledge that the statement was false and defaming to the plaintiff; (2) with reckless disregard for the truth of the statement; or (3) with negligence in failing to ascertain the truth.

*See Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). The Tennessee Governmental Tort Liability Act expressly waives immunity from suit for defamation. *See* Tenn. Code Ann. § 29-20-205(2).

Primarily, plaintiff argues that Oaks's statements were false in part because, in her view, she was not under investigation for sexual misconduct as of July 25, 2006. Oaks acknowledges telling a reporter on that morning that "we had referred to DCS" and that "there are allegations of a sexual nature" [Oaks dep. at 83] but he insists that this information was true.

However, as noted above, Lindsey testified that as of the morning of July 25, 2006, he "personally had not heard anything about sexual allegations until [plaintiff and her counsel] had a press conference" later that day. [Lindsey dep. at 80]. He further testified, "We weren't investigating" allegations of "inappropriate" or "sexual" conduct as of the morning of July 25, 2006. [Lindsey dep. at 95]. Lindsey has also stated that he was the decision-maker in the investigation of plaintiff [Lindsey dep. at 93] and Oaks's "blast" email indicated that "*the superintendent* has determined" (emphasis added) to suspend plaintiff. Although it is certainly contradicted by the record as a whole, the testimony of the ultimate decision-maker Lindsey raises a genuine issue of material fact as to the truth of Oaks's July 25, 2006 statement that plaintiff was under investigation, and had been suspended, in part for allegations of a sexual nature.

Oaks also contends that on the morning of July 25, 2006, he confirmed the correctness of his email and press release with Lindsey, Ms. Sims, Bob Thomas, and Donna Wright prior to the release of that information. [Oaks dep. at 70, 73-74, 81]. However, neither Lindsey nor Sims can confirm speaking with Oaks regarding the press release that morning. This discrepancy, paired with Lindsey's testimony cited above, further raises a genuine issue of material fact as to whether Oaks acted with negligence and/or reckless disregard as to the truth of his public statements regarding plaintiff.

While the present record certainly does not favor plaintiff on her slander claim, at summary judgment it is not the court's role to weigh evidence or to determine credibility. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Because plaintiff has cited evidence raising genuine issues of material fact, Oaks's motion must be denied. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge